IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:17-15-1 |
| | ) | Judge Stephanie L. Haines |
| ADELFO RODRIGUEZ-MENDEZ | ) | |

**OPINION AND ORDER**

On July 11, 2017, a grand jury returned a superseding indictment charging Adelfo Rodriguez-Mendez ("Defendant") with conspiracy to distribute and to possess with intent to distribute cocaine (Count One) and two counts of possession with intent to distribute and distribution of cocaine (Counts Two and Five) [Doc. 49].[1] Defendant proceeded to a jury trial. At the close of the Government's case, the Court denied Defendant's oral motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). On July 21, 2021, the jury returned a verdict of guilty as to each of Counts One, Two and Five [Doc. 355].

Presently before the Court is Defendant's renewed motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c)(1) [Doc. 360]. Defendant also has filed a motion for new trial pursuant to Federal Rule of Criminal Procedure 33(a) [Doc. 361]. The Government has filed an omnibus response to those motions [Doc. 363]. For the following reasons, both of Defendant's motions will be denied.

## I. Renewed Motion for Judgment of Acquittal

Defendant moves for a judgment of acquittal under Rule 29(a). He argues that the Government failed to present sufficient evidence as to each element of the charged offenses of

[1] Defendant was also charged at Count Six of the Superseding Indictment with conspiracy to commit money laundering. Prior to trial, Count Six was dismissed as to Defendant upon Government motion on July 13, 2021 [Doc. 335].

conspiracy to distribute and possess with intent to distribute cocaine, and possession with intent to distribute cocaine.

Specifically, as to the conspiracy count, Defendant argues that the evidence was insufficient to support a finding that he was a member of a conspiracy to distribute cocaine or that he knowingly joined any kind of agreement knowing of that objective. Instead, Defendant avers that, at best, the evidence merely established that he kept "bad company," or that he was present when illegal activities occurred. As to the possession with intent to distribute counts, Defendant argues that the Government failed to show that he had control over any cocaine that was distributed; rather, the evidence only established that others, such as Geneva Gore or the Moyer brothers, had control over it.

**A. Standard**

"'[T]he Rule 29 judgment of acquittal is a substantive [judicial] determination that the prosecution has failed to carry its burden.'" *United States v. John-Baptiste*, 747 F.3d 186, 200 (3d Cir. 2014) (quoting *Smith v. Massachusetts*, 543 U.S. 462, 468 (2005)). A defendant "challenging the sufficiency of the evidence" pursuant to Rule 29 "bears a heavy burden." *John-Baptiste*, 747 F.3d at 201 (quoting *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992)).

In deciding whether to grant a motion for acquittal, the trial court is required to view the evidence in the light most favorable to the prosecution and to draw all reasonable inferences in the Government's favor. *United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir. 1984). The court "must determine whether the government has adduced sufficient evidence respecting each element of the offense charged to permit jury consideration." *United States v. Giampa*, 758 F.2d 928, 934-35 (3d Cir. 1985). A reviewing court "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [its] judgment for

that of the jury." *United States v. Caraballo–Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). The jury's verdict must be assessed from the perspective of a reasonable juror, and the verdict must be upheld as long as it does not "fall below the threshold of bare rationality." *Caraballo-Rodriguez*, 726 F.3d at 431 (quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012)).

**B. Analysis**

Defendant first challenges the jury's verdict as to the conspiracy count. In order to prove a conspiracy, the Government must show: (1) a shared unity of purpose; (2) an intent to achieve a common illegal goal; and (3) an agreement to work toward that goal. *Caraballo-Rodriguez*, 726 F.3d at 425. The Government must establish each element beyond a reasonable doubt. *Id*. And, although the prosecution must prove a defendant's knowledge of the conspiracy's specific objective, that knowledge need not be proven by direct evidence. *Id.* at 431. Indeed, the Government may prove the existence of a conspiracy entirely through circumstantial evidence. *United States v. Williams*, 974 F.3d 320, 370 (3d Cir. 2020) (citing *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir. 1986)).

Here, the crux of Defendant's argument is that the Government's evidence established nothing more than that he kept "bad company" with the likes of Geneva Gore and John and Jason Moyer, and that he may have been present at his garage while others distributed cocaine from it, without his knowledge. While it is true that mere presence at the scene of a crime or associating with criminals is not in itself sufficient evidence of a conspiracy, *see*, *e.g.*, *United States v. Tyson*, 653 F.3d 192, 211 (3d Cir. 2011) ("our conspiracy jurisprudence does not sanction guilt by association"), the evidence presented at trial in this case, as well as the inferences that rationally

can be drawn from it, goes well beyond simply "keeping bad company," or Defendant's "mere presence" at the crime scene.

Instead, the Government presented testimony not only from Gore, but from Joseph Seelinger and Steven Spearman, all of whom testified as to Defendant's knowledge of, and active participation in, the drug distribution activities occurring at the East Coast Monster Garage. The testimony from these individuals detailing events involving Defendant that took place over multiple years suggested a longstanding pattern of illicit activity between them and Defendant, and others, from which a rational juror could conclude that Defendant understood that he was participating in a drug distribution conspiracy. *See*, *e.g.*, *United States v. Claxton*, 685 F.3d 300, 310 (3d Cir. 2012) ("[A]lthough the number of transactions here does not, on its own, prove [defendant's] knowledge of the character of the conspiracy, it does make it more likely that he knew the business he was about").

It is well-settled that witness credibility determinations must be made by the jury. *United States v. Lewis*, 284 F. App'x 940, 942 (3d Cir. 2008). The jury in this case clearly found the testimony of Gore, Seelinger and Spearman to be credible, and their credibility determination was rational in light of the evidence. The Court is satisfied that there was more than sufficient evidence presented at trial from which a reasonable juror could find beyond a reasonable doubt that the Government proved that Defendant was a member of a conspiracy, that the object of that conspiracy was to distribute cocaine, and that Defendant himself conspired to distribute, and to possess with the intent to distribute, cocaine.

As to the possession with intent to distribute counts, Defendant argues that the Government failed to produce sufficient evidence that he had control over the cocaine involved in the

transactions underlying those counts. Rather, he contends that the evidence showed only that other people, such as Geneva Gore and the Moyer brothers, had control over that cocaine.

The essential elements of the substantive offense of possession of a controlled substance with intent to distribute are that the defendant: (1) knowingly possessed a controlled substance with (2) the intent to distribute it. *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) (citation omitted). A jury may convict on such a charge if it concludes that the defendant actually or constructively possessed the controlled substance. *Id*.

Here, Counts Two and Five of the superseding indictment charged Defendant with possession with intent to distribute cocaine on July 1, 2016 and March 22, 2017, respectively [Doc. 49]. As to these counts, the Government offered into evidence an audio recording which detailed Defendant discussing and selling cocaine to a confidential informant on the dates specified in the superseding indictment. In addition, the Government presented the testimony of Corporal Kristen Beattie and Special Agent Derrick Bassler, who both testified as to their surveillance of the controlled buys between Defendant and the confidential informant on those dates, corroborating the transactions discussed on the audio recordings. Viewing the evidence presented at trial in the light most favorable to the Government, the Court finds that there was more than sufficient evidence by which the jury rationally could conclude that Defendant possessed with the intent to distribute cocaine on the dates set forth in the superseding indictment.

**C. Conclusion**

The Third Circuit Court of Appeals has made clear that "[i]t is up to the jury—not the district court judge or our Court—to examine the evidence and draw inferences. Unless the jury's conclusion is irrational, it must be upheld." *Caraballo-Rodriguez*, 726 F.3d at 432. Here, based on the evidence before it, the jury's conclusion that Defendant was involved in a conspiracy to

distribute and possess with intent to distribute cocaine clearly was rational. Likewise, the jury's conclusion that Defendant possessed with intent to distribute cocaine on the dates specified in the superseding indictment was rational based on the evidence presented at trial. Because the jury's guilty verdict on all three counts did not fall below the "threshold of bare rationality," it must be upheld. Accordingly, Defendant's motion for judgment of acquittal will be denied.

## II. Motion for New Trial

Defendant also has filed a motion for new trial pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure. Defendant seeks a new trial based on the admission into evidence of the audio recordings generated by the deceased confidential informant. He challenges the admission of those recordings on two grounds: (1) that they were not adequately authenticated; and (2) that the audio recordings contained hearsay from an unavailable declarant and the admission of those recordings therefore violated his Sixth Amendment right to confront the witnesses against him.

### A. Standard

Federal Rule of Criminal Procedure 33(a) permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires." The decision to grant or deny a motion for new trial lies within the court's discretion. *United States v. Vitillo*, 490 F.3d 314, 325 (3d Cir. 2007). In considering a motion for new trial, this Court must "exercise great caution in setting aside a verdict reached after fully-conducted proceedings," and particularly so where "the action has been tried before a jury." *United States v. Kelly*, 539 F.3d 172, 182 (3d Cir. 2008) (*quoting United States v. Kamel*, 965 F.2d 484, 493 (7th Cir. 1992)).

Even if a trial court improperly admits evidence, this "does not automatically mandate a new trial. There must be prejudice that affects a substantial right of the defendant." *United States v. Giampa*, 904 F. Supp. 235, 302 (D.N.J. 1995) (quoting *United States v. Newby*, 11 F.3d 1143,

1147 (3d Cir. 1993)). Accordingly, a district court may order a new trial "only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Staten*, 557 F. App'x 119, 121 (3d Cir. 2014) (quoting *United States v. Silveus*, 542 F.3d 993, 1004–05 (3d Cir. 2008).

**B. Analysis**

Defendant first argues that the audio recordings were improperly admitted into evidence because they were not adequately authenticated under the seven-part test set forth in *United States v. Starks*, 515 F.2d 112, 121 (3d Cir. 1975).[2] Specifically, Defendant contends that the confidential informant was unable to testify as to whether he was capable of operating the device; that no person who participated in the conversations testified as to whether the recordings were authentic or correct or whether changes, additions or deletions were made; and that the Government failed to produce evidence indicating that the recording was made in good faith without any inducement.

The authentication of evidence is governed generally by Rule 901 of the Federal Rules of Evidence. Under Rule 901(a), in order to satisfy the requirement of authenticating or identifying an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." While the burden rests on the proponent, the Third Circuit has held that "[t]he burden of proof for authentication is slight." *United States v. Ligambi*, 891 F. Supp. 2d 709, 717 (E.D. Pa. 2012) (quoting *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 328 (3d Cir. 2005). Ultimately, Rule 901 requires only a foundation from which the fact-finder could

[2] In *Starks*, the Third Circuit Court of Appeals favorably noted a seven-part test for establishing a foundation for the admission of a sound recording: (1) that the recording device was capable of taking the conversation now offered in evidence; (2) that the operator of the device was competent to operate the device; (3) that the recording is authentic and correct; (4) that changes, additions or deletions have not been made in the recording; (5) that the recording had been preserved in a manner that is shown to the court; (6) that the speakers are identified; (7) that the conversation elicited was made voluntarily and in good faith, without any kind of inducement. *Starks*, 515 at 121 n. 11.

legitimately infer that the evidence "is what it is claimed to be." *United States v. Credico*, 718 F. App'x 116, 119 (3d Cir. 2017).

In this case, the authentication issue involves audio recordings of conversations between Defendant and a now-deceased confidential informant, and others. In order to lay a foundation for authenticating the recordings, the Government presented testimonial evidence from Corporal Beattie, who testified as to her familiarity with the recording equipment and, based on her experience, as to its reliability in accurately recording conversations. She further testified that, although she does not speak Spanish, the audio appeared to be in the same form as when she first heard it while listening in real time, and that there were no gaps or interruptions during the recording process. The Government further strengthened the foundation through the testimony of Geneva Gore, who stated that she had known Defendant since 2011, that she spoke to him in person multiple times a week and on the phone nearly daily, and that she also knew and was familiar with the voices of the confidential informant and the Moyer brothers. Based on her familiarity with all of the speakers, Gore was able to identify each voice, in both English and Spanish, on the recording.

In light of the testimony of Beattie and Gore, the Court determined that the Government met its burden of authentication under Rule 901, and admitted the audio recordings. The Court does not believe this ruling was in error. Beattie testified as to the operation and reliability of the equipment and that the recording appeared to be authentic and correct with no modifications from what she had heard while listening to the conversations in real time. Gore was able to identify the voices of all of the participants on the recordings in both English and Spanish based on her familiarity with those voices. *See* F.R.E. 901(b)(5) (an opinion identifying a person's voice on a recording may be based on hearing the voice at any time under circumstances that connect it with

the alleged speaker); *see also Ligambi*, 891 F. Supp. 2d at 717-18 (voice identification may be established by lay opinion from a person who has heard and is familiar with the voices of the speakers).

In *Lexington Insurance*, the Third Circuit reaffirmed the standard for authentication, stating:

> The showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic.

Id. at 329 (quotation omitted).

Here, the Government presented evidence to authenticate the audio recordings through Gore's voice identification of the speakers, corroborated by the testimony of Beattie who had heard the conversations in real time. Accordingly, the Court is satisfied that the Government laid an adequate foundation from which a fact-finder could legitimately infer that the "evidence is what its proponent claims it to be," the minimal showing required for authentication under Rule 901. As such, the audio recordings properly were admitted for consideration by the jury.

To the extent Defendant contends that the admission of the recordings fails to meet the strict standards of *Starks*, the Court disagrees. In the first instance, the Third Circuit has explained that *Starks* was not intended to establish "a uniform standard equally applicable to all cases." *Credico*, 718 F. App'x at 119. Instead, "within reason," whether the "proof of facts creat[es] a sufficient foundation for the admission of a tape recording is a matter to be decided by the trial court." *Id*. (quotation omitted). Thus, some courts have chosen not to apply the *Starks* factors as a rigid standard, but instead to determine "whether the proof of facts creates a sufficient foundation

for the admission of a tape recording," using the burden of proof for authentication under Rule 901 generally. *See*, *e.g.*, *United States v. Madera*, No. 3:CR-17-298, 2019 WL 2509896, at *3 (M.D. Pa. June 14, 2019). In any event, the Court does not believe that its ruling is contrary to *Starks*. Rather, the Court is satisfied that under either the more rigid standards of *Starks* or the more minimal standard of Rule 901, the testimony of Beattie and Gore was more than sufficient to lay an adequate foundation for the authentication and admission of the audio recordings in this case.

Defendant next challenges the admission of the audio recordings on constitutional grounds, arguing that the recordings contain hearsay statements, and that the admission of those recordings violated his Sixth Amendment right to confront the witnesses against him, entitling him to a new trial. Defendant's argument is unavailing.

Initially, the recorded conversations do not constitute hearsay. As the Government aptly notes, the recordings contain statements not only by the confidential informant, but by Defendant himself. Defendant's statements on the recordings are admissions by a party opponent, which are not hearsay under Federal Rule of Evidence 801(d)(2)(A). In turn, the statements of the confidential informant likewise are not hearsay, because they were not offered for the truth of the matter asserted, but to provide context to Defendant's statements. See *United States v. Lee*, 339 F. App'x 153, 157 (3d Cir. 2009) (recording of a conversation between the defendant and a confidential informant did not contain hearsay – the defendant's statements were admissions of a party opponent, and the confidential informant's statements were not offered for truth of matters asserted).

Moreover, Defendant's argument that the admission of the recordings violated his Sixth Amendment rights is foreclosed by the decision of the Third Circuit Court of Appeals in *United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005). Defendant contends that the purpose of

the recordings was to elicit statements that later could be used against him in court, and that therefore the admission of those statements violated his right to confrontation under the Sixth Amendment. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004) (holding that testimonial hearsay statements may not be introduced against a defendant unless the declarant is unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant).

However, because "[t]he lynchpin of the *Crawford* decision . . . is its distinction between testimonial and nontestimonial hearsay," the rule announced in *Crawford* applies only to testimonial hearsay. *Hendricks*, 395 F.3d at 179. The *Hendricks* court explicitly determined that surreptitiously monitored conversations and statements contained in wiretap recordings are not "testimonial" for purposes of *Crawford*, and held that "if a Defendant or his or her coconspirator makes statements as part of a reciprocal and integrated conversation with a government informant who later becomes unavailable for trial, the Confrontation Clause does not bar the introduction of the informant's portions of the conversation as are reasonably required to place the defendant or coconspirator's nontestimonial statements into context." *Id*. at 184.

Defendant acknowledges *Hendricks*, but nevertheless asserts that its holding is "flawed." Defendant cites no authority from this, or any other, jurisdiction in support of his interpretation, and, notwithstanding his critique, *Hendricks* remains binding on this Court. The Court's ruling that the admission of the audio recordings was permissible under the Sixth Amendment is in accord with the law of this circuit, and Defendant's disagreement with that law is an insufficient basis to grant a new trial.

**C. Conclusion**

The Third Circuit Court of Appeals has recognized that motions for a new trial under Rule 33 "are not favored and should be granted sparingly and only in exceptional cases." *United States*

*v. Wrensford*, 866 F.3d 76, 93 n. 9 (3d Cir. 2017) (*quoting United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008)). This is not an exceptional case. Defendant has failed to show any error relating to the admission of the audio recording, let alone an error so significant as to create a danger that a miscarriage of justice occurred. Instead, the Court stands by its ruling that the audio recording properly was authenticated under Rule 901, and properly was admitted into evidence in accord with the controlling case law in this circuit. Because Defendant has failed to show a new trial is required in the interest of justice, his motion for new trial will be denied.

An appropriate order will follow.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:17-15-1 |
| | ) | Judge Stephanie L. Haines |
| ADELFO RODRIGUEZ-MENDEZ | ) | |

**ORDER OF COURT**

AND NOW, this 29th day of December, 2021, upon due consideration of Defendant's renewed motion for judgment of acquittal [Doc. 360] and motion for new trial [Doc. 361], and the Government's omnibus response thereto [Doc. 363], for the reasons set forth in the accompanying Opinion, IT IS ORDERED that Defendant's renewed motion for judgment of acquittal [Doc. 360] hereby is **denied**; and,

IT FURTHER IS ORDERED that Defendant's motion for new trial [Doc. 361] hereby is **denied**.

s/Stephanie L. Haines
Stephanie L. Haines
United States District Judge

cc/ecf: All counsel of record